## Case No. 1,468.

BLACKBURN et al. v. STANNARD et al.

[5 Law Rep. 250.]

District Court, D. Connecticut. July 29, 1842.

INJUNCTION—PLEADING—SURPLUSAGE—DEMURRER.

1. On an application for an injunction, it is not competent for the respondents, by reciting an original petition in bankruptcy, and concluding in demurrer, to test the sufficiency of the original petition in bankruptcy, that being collateral.

2. Whatever is surplusage in a plea to a bill in equity, may be rejected.

3. A demurrer to evidence, is not a good plea to a bill in equity.

4. An application for an injunction, should contain a description of the property sought to be protected by a decree, together with appropriate allegations of the danger or loss impending.

In equity. This was a petition for an injunction against Stannard and his assignees, upon the alleged ground that the creditors of Stannard have filed proceedings in the district court against him as a bankrupt, and in this petition, they alleged that he was collecting the debts, and that the other respondents were selling the property put into their hands. On the 21st of July, a process of subpoena issued against Stannard, Buckingham, and Carew, to show cause on the 29th day of July. The respondents all appeared, and made answer as follows: "And now the respondents come into court, and crave oyer of the said petition (in bankruptcy), and it is read to them in the words and figures following." Here followed the petition in bankruptcy verbatim; and the conclusion is in these words: "which being read and heard, the respondents defend, plead, and say, that the said petition and matters therein contained are insufficient in the law, and therefore pray judgment." Under this plea or answer, the counsel for the respondents argued, that the original petition in bankruptcy, and the present petition for an injunction, were but one; that no claim could be urged for an injunction, unless that proceeding should be predicated upon a petition in bankruptcy, couched in suitable averments. The petition for an injunction being wholly dependent upon the proceeding in bankruptcy, that must be sufficient to warrant the decree in bankruptcy; that not being sufficient for any such purpose, such insufficiency was available here. In recurring to that petition, it will be seen, that there has been no act of bankruptcy set up, in any legal form. That the respondent has committed one or more of the acts denominated acts of bankruptcy, is no such averment as will authorize the court to pass the proper decree. There is no time specified when such act or acts were committed; there is no date to the petition in bankruptcy. That proceeding on its inspection will be found insufficient. The counsel further proceeded to argue the insufficiency of this application for an injunction. It is not alleged that the property of the bankrupt is about to be destroyed— it is not alleged that any or either of these respondents are insolvent.

The counsel for the application objected to the reception of this plea, as involving the sufficiency of the petition in bankruptcy, and proceeded to argue the sufficiency of the petition for an injunction. In point of fact, the petitioners have only to make out a prima facie case, and in point of form, these facts may be stated substantially. There are no technical rules which should govern a court of equity, in a case like this.

Mr. Rockwell, for petitioners.
Strong & Foster, for respondents.

JUDSON, District Judge. In determining this case, it may be necessary to inquire, what is the plea interposed by the respondents? This court, sitting in bankruptcy, has on file, a petition instituted by the creditors of Stannard, founded upon the compulsory provision of the bankrupt act, and now these creditors apply for an injunction against the bankrupt, who is, as they allege, collecting and applying to his own use, the debts; and against Wm. A. Buckingham, to whom a part of the bankrupt's property has been assigned; and also against Carew, the other respondent, who, it is said, is the general

assignee under the state insolvent law. The respondents come in, and having prayed oyer of the original petition, recite the same at large, and then conclude in the form of a demurrer, "that the petition is insufficient in the law." This form of pleading, to say the least, is novel. The plea contemplates, and the counsel have insisted on the right· of calling in question and testing the legal sufficiency of the original petition in bankruptcy, pending in this court, sitting in bankruptcy, that being one branch of its jurisdiction, while this petition proceeds on· the ground of its equity jurisdiction. The records, proceedings and decrees in equity are kept in the same manner as records and judgments at law. In bankrupt proceedings no such records are made up. By the act of congress, the files are to be kept, and the preservation of these files is a substitute for a record.

Upon the present application to this court, as a court of equity, the proceedings in bankruptcy are to be brought up as evidence, in the same manner as the partner would show the danger to which his property, or rights of property, may be exposed, and to prevent which the injunction is prayed for. By way of illustration, a case may be stated. Suppose A institutes an action of ejectment against B, relying upon an execution title acquired by a levy under the Connecticut statute, and the defendant in ejectment, "prays oyer of the original proofs, judgment, execution and levy, and then demurs to the declaration?" Would this be a demurrer to the original process—the judgment or the return? Surely not. These several documents might be essential evidence for the plaintiff in ejectment, on the general issue. Suppose another case. A sheriff is sued for a false return, and instead of pleading not guilty, leaving it for the plaintiff to exhibit in evidence, the original proceeding, he should pray oyer, and demur to the declaration. Let me suppose a third case. A petition in chancery is preferred to validate a deed, rendered void at law, for the want of some one of the legal requisites. The defect in the deed is particularly stated in the petition. On proceeding to a decree, in such a case, the petitioner would make an exhibition of his defective deed—this would be matter of evidence, but the respondent does not wait for this exhibition, and praying to see the deed, recites it at large, and concludes with a demurrer to the petition, not in the form of a demurrer to the evidence, but a demurrer to the petition.

The question in this case, as well as in the cases stated, is, can the pleader, under this peculiar mode of pleading, go back and try the validity or sufficiency of the collateral matter? I think not. By an examination of the plea, it will be found, that the counsel do not proceed upon the idea, that this is a demurrer to the evidence, but they proceed upon the ground, that the two petitions are but one: and being but one, their demurrer will reach all defects apparent in each. The court knows of no rules of practice that will permit a respondent to demur to the evidence in support of a bill in equity. The respondent may demur to the bill, or he may make answer. If he elects to demur to the bill, that demurrer cannot reach beyond the allegations in the bill. This is a bill in equity praying for an injunction for certain causes alleged in the bill. I recur again to the question first stated; what is this plea? It clearly is a demurrer to this petition, and nothing more. That part, which is a recital of the application in bankruptcy, may be rejected as surplusage, leaving the demurrer applicable to the petition for an injunction. Under such a plea, it would be manifestly wrong to go into the consideration of any matters not on the face of the bill. The court will not dictate to the party what plea, or answer shall be made, but the party is, and must be left to his own discretion, and the court will determine the legal effects of that plea or answer. Because this peculiar form of pleading has been adopted by the party, it does not follow that the court can adjudicate upon another petition addressed to another branch of its jurisdiction, but the present investigation can be extended to nothing but the bill itself. It involves the sufficiency of the petition for an injunction, and this question has also been argued, and so far as I have been able to consult the usual forms and precedents, and examine the principles in question, this application for an injunction is insufficient.

The great principle upon which a court of equity proceeds to decree an injunction, is the present or future danger to which the property is, or may be subject. If this danger be threatened, or is imminent, the court, by its proper decree, will interpose, to save the property and protect the rights of the party. In this case the alleged causes for this interposition have been examined, and there is no allegation, which resembles danger, either threatened or imminent. These are indeed loose and indefinable statements in the petition, which perhaps were intended as allegations of danger, but they are found to fall very far short of the usual averments in similar cases. These are the allegations to which I refer: 1st. "On the 21st day of May last, the said Stannard transferred and assigned to Wm. A. Buckingham, a large amount of his personal estate, which said goods are in whole or in part now in the possession of said B., who is selling the same." These are all the allegations in relation· to Buckingham, but it is confidently affirmed, that something more is required. For all that appears here, and for aught the court can know, Buckingham may be a safe depository for these goods, and this is the legal presumption, until the contrary appears. It may be said, that Buckingham is selling these goods, and suppose he is, and it should be found also, that he is entirely responsible

to account for the avails, then there may be no necessity for an injunction. It is not stated that he is destroying, but only selling the goods. It is not stated that there is any personal or peculiar value attached to this property, which should be preserved. If these goods are common articles of traffic, and the holder is responsible, then the sale may be a benefit, rather than an injury. To entitle the petitioner to the injunction prayed for, it should have been alleged that Buckingham was insolvent and unable to account for the goods, or, that there was some special property in them, which would be lost to the petitioner if sold. 2d. The allegations in regard to Carew, another respondent, are liable to the same objections. "And that on the 23d day of May, the said Stannard made a conveyance of all his property, to J. C. Carew, in trust for all his creditors." If Carew be an unsafe depository of this portion of the goods, in his hands, or if insolvent, it should have been so alleged. If underselling —squandering—or destroying the goods, the facts should have been stated. 3d. The allegations in regard to Stannard himself are equally wanting in substance. "And that the said Stannard is now collecting the debts due to him, or that the person to whom he may have assigned said debts is collecting the same and applying the same to his own use." This mode of alleging a fact in the alternative, "the said Stannard or some other person is collecting," cannot be sanctioned. If these debts are all in the hands of "some other person," then the prayer should not have extended against Stannard, nor can a decree be passed against "some other person" not named in the application. In relation to Stannard, it is not even stated that he is insolvent or a bankrupt—or is of inability to account for what may be collected. The only allegation looking that way, is, that Blackburn & Co. have filed their petition in bankruptcy against him; but the filing a petition does not constitute the fact of bankruptcy nor the fact of danger. It should have been alleged that Stannard was a bankrupt and insolvent—that the books and notes were in his hands—that he was collecting the same and applying the avails to his own use, while he was in fact unable to respond or account for the same, defrauding the creditors thereof, and that the said creditors were in danger of losing the whole amount of such collections, should the said Stannard be permitted further to collect and misapply the avails thereof, and that the petitioners would then be remediless.

There is still another objection to this petition, of a more general nature. There is a material defect in the description of the property, sought to be protected. The petition, when examined, is found to contain no other designation or description of the property than this, "that on the 21st day of May last, the said Stannard transferred and assigned to Wm. A. Buckingham, a large

amount of his personal estate." The term "personal estate" includes all kinds of property except lands, tenements and hereditaments, when used in its most extensive sense, as it is here. In an application for an injunction, the same minuteness is not required, as in an action of trover, but surely, there should be some description given. Suppose this had been an application for a decree against waste, and it had been alleged that the petitioner was the owner, in fee, of a large amount of real estate? Obviously this would be insufficient. The principle involved is the same in both cases, and in each, there should be a description of the property, as well as appropriate allegations of the danger feared. The present application wants both, and the prayer must be denied. The petition however may be amended, in all these essential particulars, and it may not be improper to say, that the court does not mean to cast any obstacles in the way of creditors who are so deeply interested in the preservation of the property of bankrupts. The equity jurisdiction of the court, in cases of this sort, arising under the bankrupt law, is of great importance to the community. Without this power, and a judicious exercise of it, there might be found numerous cases of fraud and injustice which could be reached by no other process. The dishonest bankrupt, on the eve of failure, casts about, to find some favorite trustee in whose hands could be safely deposited his effects, until the storm should pass away, leaving his creditors unprovided for, and unpaid. To prevent such injustice, this chancery power is given, and its exercise is essential to the administration of justice at all times, but more especially under the provisions of the bankrupt act. This is no new power, neither is it any extension of old power. It belongs to, and is a part of the great equity system, which has long been established.